# Shippen's Heirs *versus* Clapp.

Where a testator authorizes by his will his executors to sell all or any part of his real estate, for the payment of debts, it is equivalent to a devise to them for that purpose.

After the executors have exercised such power, by entering into articles of agreement for the sale of the real estate, and the purchaser has gone into possession, the heirs have no such title as will enable them to enforce payment of the purchase-money by an action of ejectment. The action must be in the names of the executors.

Where interlineations and alterations were made by one executor and the vendee, after the other executor had executed the articles of agreement, and the executor who first signed the agreement died, and the other as surviving executor ratified the agreement, as changed and interlined by various acts, such interlineations could not afterwards be set up as avoiding the articles.

A sale made by executors is not void because part of the consideration was secured by a judgment against a third party, assigned to them and guarantied by the purchaser.

Although not in the usual and ordinary form of business, for the want of discretion in taking or managing such a claim the executors would be liable in the ordinary way.

ERROR to the Court of Common Pleas of *Venango county.*

This was an action of ejectment by the heirs of Henry Shippen, deceased, against Ralph Clapp, to recover 4015 acres of land in Venango county. The title was admitted to have been in Henry

[Shippen's Heirs *v.* Clapp.]

Shippen, and the plaintiffs claimed as his children and heirs at law. The defendant showed that on the 4th January, 1838, Henry Shippen made the following last will and testament, which was admitted to probate on the 23d March, 1839 :—

"In the name of God, amen. I, Henry Shippen, of Meadville, do make this my last will and testament: First. To my beloved wife Elizabeth, I give and devise my brick house and 4 lots in Meadville, and the 8 acres east of the same, to hold for and during her life ; I also give her all my personal property, furniture, and goods, except my law books and debts due me : this to be in addition to what is allowed her by law as her dower out of the rest of my estate. 2. My debts are to be paid, and I authorize and empower my executors to sell all or any part of my real estate, and to make deeds of conveyance for the same, as well as for all such tracts or pieces of land as I have or may contract to sell by articles in writing, for I make no verbal contracts. 3. As to all the rest, residue, and remainder of my estate, real and personal, after my debts and legacies are paid, I give, devise, and bequeath the same to my eight children, Frances Shippen, Edward W. Shippen, Henry Shippen, Evans Shippen, Rush R. Shippen, Sarah Y. Shippen, William Shippen, and Franklin Shippen, to be equally divided between them, share and share alike. 4. But in addition to this equal share of my estate, I give to each of my children who shall be under the age of fourteen at the time of my death, the sum of $50 a year, or at that rate, until they shall respectively attain the age of fourteen. And to each of my children between the ages of fourteen and eighteen, the yearly sum of $100, or at that rate, until they shall attain the age of eighteen years, to assist them in obtaining an education equal to my elder children ; my wife to be the guardian of all of them until the age of fourteen, and of Sarah until the age of eighteen. 5. I appoint my friends, Stephen Barlow and J. Stuart Riddle, Esq., executors of this my last will, written in my own hand, this 4th of January, 1838.

HENRY SHIPPEN."

Letters testamentary were issued to the executors named in the will, and they entered upon the execution of the trust. And on the 17th October, 1844, entered into a contract in writing with Ralph Clapp, the defendant, for the sale of the land in controversy, at $1 per acre.

And in payment of the consideration, Clapp covenanted to transfer and assign to the executors the balance of a judgment entered in the Common Pleas of Venango county, against David Phipps, amounting to $1754.88, and the balance in six equal annual payments, with interest, and for which balance he gave his judgment to the executors. The defendant offered in evidence

[Shippen's Heirs *v.* Clapp.]

this article of agreement, and called John J. Douglas, Esq., the subscribing witness thereto, who testified in substance that the attestation was his own proper signature, and that he saw J. Stuart Riddle and Ralph Clapp sign the agreement; and that at the time the name of Stephen Barlow, the other executor, was to the instrument; that Clapp and Riddle both stated, at the same time, it was Judge Barlow's signature, but that Barlow was not present, and he signed as a witness at the request of Riddle and Clapp. That the agreement was in his handwriting, except interlineations of the numbers of the tracts, viz.: " 2633;" also, " 2680, 2696," which were in the handwriting of Riddle, and, according to the recollection of the witness, made after Barlow had signed; but of this latter fact he could not speak positively or distinctly.   The signature of Stephen Barlow was proved by other witnesses, and the agreement was admitted in evidence under exception by plaintiff's counsel.   Stephen Barlow died on the 25th of August, 1845, and the execution of the trust devolved upon Riddle, the surviving executor.

The judgment of Clapp against Phipps, transferred in the agreement, was entered on the 22d August, 1838, for a debt of $2652.94, of which amount $854.50 had been previously assigned to Arnold Plumer, Esq.   A *scire facias* was issued by Mr. Riddle, who was an attorney at law, to April Term, 1842, under which it was revived, and the amount liquidated at $3214.46.   It was again revived to February Term, 1847, and liquidated at $4435.91. Various executions were issued during the years 1848 and 1849, and the real estate of Phipps sold, and the proceeds appropriated to prior liens.   The real estate of Phipps had greatly depreciated between the date of the agreement and the sheriff's sale, by the removal of machinery, and the cutting and destruction of timber upon the land.   J. Stuart Riddle, the surviving executor, died in 1850, and letters of administration, with the will annexed, were granted to Arthur McCullum, to whom the defendant paid, at various times, $3376.43 on the agreement.

The questions arising upon the record are raised by the following points, presented by the plaintiff's counsel on the trial in the court below:—

1. The legal title is in plaintiffs, until divested by its conveyance under the power in the will, and in order to defeat their recovery here, the defendant must show such an equity as would authorize and require a chancellor to decree a conveyance, which would not be done, except upon the full performance on his part, and actual payment of the consideration.

2. The authority under the will is but a contingent power to sell, and does not enable the executors to divest plaintiff's title *ad libitum* for any other than a money consideration, and they could not change the land for other commodities, or for choses in action;

[Shippen's Heirs *v.* Clapp.]

and the alleged stipulation in the contract with defendant to take the Phipps judgment is inoperative, as respects plaintiff's interest, or their right or recovery here.

3. The executors under the will are mere agents or instruments for a specific purpose, for converting the estate into money for a contingency for specific purposes only, and an attempt to exchange it for other assets or commodities, was in the nature of a fraud upon plaintiffs, and by being participated in by defendant he has no advantage whatever from it, without at least wiping out the fraud, by paying the consideration-money for the land.

4. In no legal view of this case presented in evidence is the plaintiff's right of recovery affected by the provisions to secure in payment the judgment against Phipps, but even if they would be otherwise affected by it, the burthen of evidence is upon defendant to show an actual assignment of it, as stipulated for, and clearly show that the avails of it were lost for want of ordinary diligence in enforcing its collection.

5. The executors were not obliged to bid upon the property at the sheriff's sale; it was enough if they used such reasonable vigilance as men usually use in like circumstances, and if the money levied at the sale was as much as would have probably been affected at an earlier period, and sufficient as the law then was, and had been from prior to the contract, but its application to the defendant's judgment was diverted by subsequent legislation, the defendant is not now entitled to charge the estate in this case with the negligence of the executors therein, nor can the plaintiff's rights be affected thereby.

6. If defendant be entitled to a conditional verdict in view of the whole case, or was so at the commencement of the suit, the jury, in ascertaining the amount due, should charge him with the amount of redemption-money necessarily paid on account of his omission to pay the taxes assessed after his purchase, and also in the calculation of the amount of purchase-money to be paid. The plaintiffs are entitled to the benefit of accumulated interests on the basis or principle of annual rents.

7. If defendant and Riddle, after the execution of the contract by Barlow, and in his absence, and without his knowledge and consent, or any subsequent ratification, procured this general attestation by a subscribing witness, and the insertion of the note of interlineations made, it wholly avoids the instrument as respects plaintiffs' rights, and they are entitled to recover.

8. That although plaintiffs' interest in the land may be subject to defendant's equity, and subject to the power of the executors to convey, yet there is sufficient in them to maintain ejectment until conveyance made.

The court below (McCALMONT, P. J.) answered the foregoing points as follows :—

[Shippen's Heirs *v.* Clapp.]

" 1. We cannot assent to this point; the legal title was in the executors until the purposes of the will should be accomplished; when if the land were not sold, it would, perhaps, have been considered as in the plaintiffs, they having, by joining all the heirs in the action, elected to take the land: M. *v.* B., 2 *Rawle* 185. But the executors having agreed to convey to Clapp, if without fraud the legal title as to that portion of the land of the testator sold was divested by the sale, the sale would be presumed to have been made in pursuance of the power; the descent was broken, the purchase-money, and the right to sue for it, became fixed in the executors, their survivor, and the administrator *de bonis non ;* and the estate being in the heirs of Shippen as to the land sold, an actual conveyance by deed was unnecessary to divest their title. The articles of agreement were sufficient, unless rescinded by the laches of Clapp; and no such decision could be presumed by the jury in this case.

" As to the second branch of the point: it is not necessary that the defendant in possession should show such an equity as would require a chancellor to decree a conveyance. There might be many cases in which a defendant in possession, under articles of agreement, could maintain his possession without being in a position to compel a conveyance; as when the purchase-money not due, or some precedent act to be performed by the vendor. But it is unnecessary to enlarge upon this point—as explained, we answer in the negative.

" 2. The authority in the will was not contingent. Taking the 2d and 3d clauses, and construing them together, we consider the authority was absolute, to be controlled only by the discretion of the executors. They were to pay the debts and legacies with the proceeds, and the residue was to be equally distributed among the children, share and share alike.

" To that part of the point relating to the exchange of the land for other commodities, we do not deem it necessary to express an opinion; but the executors had power to sell for money, or negotiable notes, or judgments, or other choses in action. They had power, undoubtedly, to take, as between them and the purchaser, without fraud on the part of the purchaser, a judgment then supposed to be good, with a guaranty, in payment; and if honestly and prudently done without negligence afterwards, it would doubtless be good against the heirs on settlement of the account of the executors. It could be only alleged against the executors in such a case that they released the lien upon the land, and the same consequence would have issued had they conveyed the title without taking adequate securities, which would have made them liable to the heirs, but the purchaser would have been released from the lien. The last part of the point, and as a whole, is therefore answered in the negative.

[Shippen's Heirs *v.* Clapp.]

" We have partly answered this in answer to the 2d point; we can perceive no legal fraud in the defendant's agreeing to pay in a judgment with a guaranty. It was a common business transaction, and doubtless enhanced the price of land. The judgment, had it proved good, bearing interest, would have been a good investment, for the purpose of educating the children when they arrived at the proper ages. We can see nothing in the transaction in the nature of a legal fraud on the plaintiffs, and therefore answer the point in the negative.

" 4. Had the suit been brought by Riddle, in his lifetime, the assignment and guaranty being in the article of agreement as an original stipulation of payment, would have sustained a plea of payment *pro tanto*. It would have been otherwise, had the agreement to receive in payment been made subsequent to the original agreement, or collateral to it: 2 *Greenleaf on Ev.* 323. Under the authority in the will, the same defence can be made in the present case, if in fact the point can arise under the law, as laid down in answer to the other points. The point is however answered in the negative.

" 5. Had the action been upon the guaranty, in which light we do not consider it, the executors would have had to have shown the use of due diligence to collect the claim. If Phipps were insolvent, so that pursuit upon his personalty would have been hopeless, the executors were not bound to issue execution. In such case the burthen of proof would have been on Clapp to have shown that the judgment was lost through the negligence of the executors, in not proceeding as soon as they ought, and the jury could in determining whether by negligence, take into account all the evidence bearing upon it, *pro* and *con*, whether there was unreasonable delay in the proceeding, and if there was a decrease in the value of the property either by gradual or sudden causes, through the debts of the owner, or acts of Providence, or even—as put in the point—owing to the acts of the legislature. But the act of 1848, we instruct you, did not change the law. Before that time creditors, who had their judgments properly entered on the judgment-docket, would have been entitled to a preference ; and the defendant lost nothing in this respect by the delay, unless the change of an incorrect decision, which would be no grounds in his favour.

" If all the property that David Phipps had were sold on another judgment, and for a price inadequate to pay the judgment, it was unnecessary for Mr. Riddle to proceed on the Clapp judgment while the sale was pending in court, and before it was set aside, so that in the mean time he could not have been charged with negligence. . With these remarks, the point is decided in the negative.

" 6. We admitted evidence of the redemption-money paid by

[Shippen's Heirs *v.* Clapp.]

Cullum; but as the agreement is silent on the subject of the payment of the taxes, the subsequent payment of them would only be recoverable on an implied *assumpsit,* and the legal title is not a lien for money, not a part of the original consideration, or springing directly out of it.   This point is new, and at first we were disposed to decide otherwise; no authorities occur to us, as we cannot agree to the conclusion of the point.   We have, on consideration, concluded to answer the whole of it in the negative.

"7. This point, as a whole, under the facts, is also answered in the negative.   Riddle, after surviving Barlow, having done acts in affirmance of the contract and the administrator *de bonis non,* afterwards having received payments on the foot of it, nothing but actual fraud on the part of Clapp could avoid the deed, and we will not say, even if the case were as stated in the point; there was fraud on the part of Clapp.   The consent of Barlow might be presumed, but still it would be a question of fact for the jury.   We answer the point, as to its conclusion, in the negative.

"8. If the land was agreed to be sold to Clapp without actual fraud, in pursuance of the power contained in the will of Henry Shippen, and money received in payment of the agreement, —under the terms of the will,—then the sale would be presumed to be for the purpose of paying the debts and legacies, and the plaintiff could not maintain ejectment on the legal title, the descent having been broken.

"Even had they a right to the proceeds as land, share and share alike, the burthen of proof would be upon them to show that the debts were paid, and that the trust reposed in the executors, as to the education of the minor children, had been fully performed.   If they had not so shown us, they would have no right to a conditional verdict, because by it the money would be diverted from its proper channel, as directed by the testator. Answer in the negative."

The verdict was for the defendants.   The errors assigned were to the admission of the article of agreement in evidence, and the answer to the points presented.

*Church* and *Farrelly,* for plaintiffs in error.

*Finney,* for defendant in error.

The opinion of the court was delivered by

LOWRIE, J.—The executors are authorized to sell all or any part of the testator's real estate for the payment of his debts; and this, by our law, is equivalent to a devise of all the land to them for that purpose.   We need not say that this vests the title to the land so fully in the executors that the heirs can have no sort of

[Shippen's Heirs *v.* Clapp.]

action relative to the land, even against trespassers; for this is not necessary.· But we do say that, after the executors have sold the land by articles of agreement, and the purchasers have gone into possession, the heirs have no such title as will enable them to maintain ejectment against the purchasers, to enforce payment under the agreement. The money is coming to the executors, and they alone have the right of action for it. The right of the heirs is, to call the executors to account for their proceedings in the Orphans' Court.

But it is objected that, on account of interlineations made in the articles of agreement by one of the executors in the absence of the other, there was no valid sale. We need not discuss this; for, soon afterwards, by the death of one executor, the one who made the interlineations became the sole executor, with all the powers of both, and fully ratified, by many acts, the agreement as it was when delivered by him, and under it the defendant claims, and on it he may safely stand.

We cannot say that the sale is void, because of the fact that part of the consideration-money was secured by a judgment of the purchaser against another man, assigned to the executors and guarantied by the purchaser. It was still a sale for money, though its payment was not directly secured in the usual form. For any imprudence in taking or managing such a claim, the executors must answer in the usual way. The defendant is not bound to answer for them.

These views affirm this judgment, without requiring us to consider the other points raised: they have become irrelevant.

Judgment affirmed.

WOODWARD, J., dissented.